UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DORETHEA FRANKLIN,

       Plaintiff,

   v.

JOHN DOE #1, an officer of the Buffalo Police Department, and the CITY OF BUFFALO,

       Defendants.

**DECISION AND ORDER**

17-CV-877S

## I. INTRODUCTION

In this action, Plaintiff Dorethea Franklin seeks damages from the City of Buffalo and one of its officers for violating her constitutional rights when the Buffalo police established a checkpoint outside her house and issued summonses to her two weeks after she publicly criticized the City's checkpoint policy. Before this Court is Defendants' motion for summary judgment (Docket No. 21), which this Court will deny, for the following reasons.

## II. BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the motion for summary judgment. This Court takes the facts in the light most favorable to Franklin, the non-moving party. See Mitchell v. City of New York, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

Franklin occupies a house at 90 Cloverdale Avenue in Buffalo, New York. She identifies her neighborhood as an "area of color." (Franklin Deposition, Docket No. 21-4

1

at p. 37.)

On July 7, 2017, the Buffalo Police Department ("BPD") set up a checkpoint on Cloverdale Avenue in front of Franklin's house. (Id. at pp. 24-25; Pariseau Deposition, Docket No. 21-5 at p. 9.) During the checkpoint, Franklin felt unable to leave her house due to the police cars blocking her driveway. (Docket No. 21-4 at p. 39.) Franklin considered herself "held hostage" in her house. (Id. at p. 41.)

In her complaint, Franklin alleges that the July 7, 2017, checkpoint was set up in retaliation for her speaking out against the City's checkpoint policy in a television news interview two weeks earlier. (Complaint, Docket No. 1, ¶¶ 17-34.) The record contains no admissible evidence regarding her speech, the television broadcast, or the City's knowledge of her speech.

BPD officer Aaron Pariseau was present at the checkpoint on July 7, 2017. He testified that he was directed to report to the checkpoint by his lieutenant, and that his lieutenant had discretion for how long the checkpoint lasted. (Docket No. 21-5 at p. 10.) At some point that day, while the checkpoint was occurring, Pariseau issued several City of Buffalo Ordinance Violation Summonses to 90 Cloverdale Avenue, Franklin's residence, and placed them in the mailbox. (Docket No. 21-2, ¶¶ 2-3.). The parties do not dispute that Pariseau decided to issue the summonses himself. (Defendants' Statement of Material Facts, Docket No. 21-2, ¶ 3; Plaintiff's Counter Statement of Material Facts, Docket No. 26-1, ¶ 3.) It is not clear from Pariseau's testimony whether he issued summonses only to Franklin's property, or to other properties on her street as well. (See Docket No. 21-5 at p. 12.) Pariseau did not recall how many summonses he issued that day. (Id.)

2

Franklin did not have any personal interaction with Pariseau on July 7, 2017. (Docket No. 21-4 at p. 24.) Pariseau did not know the identity of any inhabitant of 90 Cloverdale, nor did he have any interaction with anyone from that address, when he issued the summons. (Docket No. 21-2, ¶ 4; Docket No. 26-1, ¶ 4.) Pariseau did not recall seeing any indication of Franklin's name on the property when he placed the summonses into her mailbox. (Docket No. 21-5 at p. 16.)

At a hearing on January 12, 2018, a judge found Franklin not guilty on four of seven listed property violations but found her guilty of the three violations for which summonses appear in the record: for having grass over 10" tall; having a garbage tote in her front yard; and having a car with expired registration and flat tires. (Adjudication Hearing Form, Docket No. 21-6 at p. 5; Docket No. 21-6 at pp. 2-4, Summons Numbers 3609922, 3609933, 3609944.) Franklin testified that she brought video or photographs to the hearing to dispute the charges, but that evidence does not appear in the record. (Docket No. 21-4 at p. 31.)

Franklin testified that during and after the police checkpoint on July 7, 2017, she experienced emotional distress. (Docket No. 21-4 at pp. 36, 39.) She also testified that, although no officer told her she could not leave her house, both the presence of police cars blocking her driveway and her fear of the police kept her from going to work on July 7, 2017, causing her lost income. (Id. at pp. 27, 36-37, 39-40.)

### III. DISCUSSION

Franklin claims that Defendants violated her First Amendment rights when they established a checkpoint in front of her house and issued summonses to her in what she terms retaliation for her public criticism of the City's checkpoint policy.

3

Franklin seeks a declaratory judgment that Defendants violated her federal and New York state constitutional rights, as well as compensatory and punitive damages.

Defendants move to dismiss or, in the alternative, for summary judgment on Franklin's claims.

### A. Procedural Posture

On July 15, 2019, Defendants filed a so-titled Motion to Dismiss, which consisted of a collection of documents with a memorandum of law requesting both dismissal and summary judgment. (Docket No. 21-1.) The documents Defendants submitted with their memorandum include a Rule 56 statement of undisputed facts, transcripts of Franklin's and Pariseau's depositions, copies of three summonses issued to 90 Cloverdale, and an Adjudication Hearing sheet.

Franklin responded to Defendants' motion as a Motion for Summary Judgment, submitting with her memorandum of law a Rule 56 statement of facts. (See Docket No. 26.)

Federal Rule of Civil Procedure 12 (d) states that when the Court considers documents outside the pleadings, a motion must be assessed under the standard for summary judgment. When this happens, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12 (d). Because Defendants included a request for summary judgment in their initial motion, even though it was titled as a motion to dismiss, and because Franklin responded to it as such, this Court finds that Franklin had a reasonable opportunity to present pertinent material and will therefore assess Defendants' motion under the summary judgment standard.

**B.     Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing

summary judgment may not merely rest on the allegations or denials of his pleading...."); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the non-moving party.  See Anderson, 477 U.S. at 252.

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

### C.   Federal Constitutional Claims

Franklin brings her federal claims pursuant to 42 U.S.C. § 1983. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in federal statutes and the Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Franklin's federal claim is grounded in the First Amendment.

#### 1. Municipal Liability

To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show:

" (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" Roe, 542 F.3d at 36 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60–61, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). A municipality can be held liable for a single act "tailored to a particular situation not intended to control decisions in later situations," as long as the act was directed by an official policymaker. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 406, 117 S. Ct. 1382, 1389, 137 L. Ed. 2d 626 (1997); see also Pembaur, 475 U.S. at 480-81 ("[i]f the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood").

Defendants argue that Franklin has not demonstrated the existence of a City policy

or custom that led to the checkpoint and summonses. Franklin argues that official custom or policy led to both the checkpoint and the summonses.

In moving for summary judgment, the City notes that the record lacks any evidence of a City policy that caused Franklin's injuries. (Docket No. 21-1 at p. 12.) In response to this assertion, Franklin was not permitted "merely [to] rest on the allegations …of [her] pleading," Wright, 554 F.3d at 266. Rather, to withstand summary judgment, she was required to come forth with some admissible evidence suggesting that her allegations are not "wholly fanciful." Matsushita, 475 U.S. at 586. From the evidence in the record, this Court finds that Franklin has not done so. Franklin's complaint alleges that City policy dating from August 14, 2013, provides that checkpoints may be established "only with the express permission of a (sic) Inspector, a Chief, a Deputy Police Commissioner, or the Police Commissioner." (Docket No. 1, ¶ 35.) But at summary judgment, this allegation does not suffice to establish municipal liability.

Similarly, there is no evidence to suggest that the issuance of the summonses was done pursuant to an unconstitutional policy, or was an act directed by an "authorized decisionmaker." On the contrary, Officer Pariseau testified that he decided to write the tickets himself. (Id. at p. 16.) With Pariseau's testimony that he himself decided to issue the summonses—i.e. that he was not directed to do so by any City policymaker—the burden shifts to Franklin to bring forth some evidence suggesting that the summonses *were* issued pursuant to some policy or at the order of an "authorized decisionmaker." She has not done so.

Franklin argues that the fact that Pariseau's testimony does not reveal a policy or custom does not shift the burden to her. She argues, instead, that Defendants were

8

obliged to provide evidence "affirmatively disavowing the existence of an unconstitutional custom or policy." (Docket No. 26-2 at p. 5.) But Defendants have met their burden by presenting sworn testimony that Pariseau, an individual officer, made the decision to issue the summonses. Franklin has brought forth no evidence that would allow a jury to find otherwise. And at summary judgment, Franklin cannot "merely rest on the allegations …of [her] pleading." Wright, 554 F.3d at 266. Because Franklin has submitted no evidence from which a jury could find that the checkpoint and summonses resulted from an unconstitutional policy or custom, or from orders by an authorized decisionmaker, the City is entitled to summary judgment on the issue of municipal liability.

### D.     Claims against John Doe Officer #1

Franklin's complaint names "John Doe #1" as a defendant. The City identified Officer Pariseau as the officer who issued the summonses and he was deposed as to their issuance. As an initial matter, this Court notes that the complaint was not amended to name Pariseau, nor has he been served in this matter. These facts raise the question of whether Pariseau is even a proper party in this matter. It is not necessary to resolve this question, however, because summary judgment is warranted as to Pariseau.

Defendants argue that summary judgment is proper as to Pariseau because he had probable cause to issue at least some of the summonses. Franklin counters that because she was found "not guilty" on some of the summonses, there is a question of fact regarding Pariseau's motives in issuing some of the summonses.

A private individual who asserts a First Amendment violation must show: "(1) [s]he has a right protected by the First Amendment; (2) the [defendants'] actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the

[defendants'] actions caused h[er] some injury." Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

The existence of a retaliatory motive is an essential element of a First Amendment retaliation claim. If an official takes adverse action against someone based on a retaliatory motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. Nieves v. Bartlett, 587 U.S. __, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019).

"Probable cause is an absolute defense to a 'First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive.'" Norton v. Town of Islip, 97 F. Supp. 3d 241, 257–58 (E.D.N.Y. 2015) (quoting Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012)). "Where there is probable cause to arrest a plaintiff or issue a summons, the Court need not make an inquiry into the defendants' motives for doing so." Id. (quoting Fabrikant, 691 F.3d at 215 (granting summary judgment to defendants on plaintiff's claim for First Amendment retaliation because defendants had probable cause to arrest plaintiff for animal cruelty)). See also Espinoza v. City of New York, No. 11–CV–2108, 2012 WL 4761565, at *5 (S.D.N.Y. Aug. 3, 2012) (dismissing plaintiff's claim for First Amendment retaliation because police had probable cause to ticket plaintiff). The Court assesses probable cause under the "totality of the circumstances." See Stansbury v. Wertman, 721 F.3d 84, 92–93 (2d Cir.2013). In the criminal context, "[p]robable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been

or is being committed by the person to be arrested." United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004).

Here, this Court finds that at least three of the tickets issued to 90 Cloverdale were based on probable cause, because they resulted in a guilty finding at an adjudication hearing. (Docket No. 26-5 at pp. 2-4: 3609922, grass over 10 ft tall; 3609933, garbage tote front yard; 3609944, car with expired registration, flat tires, not moved in over 6 months; guilty finding on these three ticket numbers at Docket No. 26-1 at p.5.) The guilty finding indicates, at the very least, that Pariseau had reason to believe that three City ordinances were being violated, negating Franklin's claim of retaliatory motive. Summary judgment is warranted on this basis.

Further, this Court finds that a jury would have to speculate to find a retaliatory motive behind Pariseau's actions. There is no admissible evidence in the record that Franklin ever spoke to the media, let alone that Pariseau knew of her speech. Pariseau testified that he did not know Franklin, did not know that she lived at 90 Cloverdale, and did not see her name on the house when he put the summonses in her mailbox. There is no evidence, direct or circumstantial, tying Franklin's speech to Pariseau's issuance of the summonses. "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen Assoc. v. Incorporated Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). For these reasons, summary judgment is proper as to Officer Pariseau.

### E.  Franklin's New York Constitutional claims

Because this Court finds Franklin's federal constitutional claims cannot proceed, it will also dismiss her claims arising under state law.

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Subsection (c) of § 1367 "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997). A district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3).

Here, since this Court is granting Defendants' motion for summary judgment on Franklin's federal claims, there is no independent basis for federal jurisdiction over her state law claims. See, e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). This Court therefore declines to exercise supplemental jurisdiction over Franklin's claims arising under the New York Constitution. Accordingly, these claims will be dismissed.

### IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted. Because a reasonable jury could not find that either the establishment of the checkpoint or the issuance of the summonses occurred pursuant to any municipal policy or official orders, summary judgment is granted to the City of Buffalo. Because Pariseau

had probable cause to issue three of the summonses, and because Franklin has not brought forth any facts suggesting that Pariseau had a retaliatory motive in issuing the summonses, summary judgment is granted as to Pariseau in his individual capacity. In the absence of any remaining federal claims, Franklin's New York constitutional claims will be dismissed.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 21) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:      November 3, 2020
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge